THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CARLOS PIMENTEL HERNÁNDEZ, Defendant and Appellant.

No. 12561. Argued February 3, 1948.—Decided April 21, 1948.

*R. A. Arroyo Ríos* for appellant. *Luis Negrón Fernández, Attorney General,* and *J. Rivera Barreras, Prosecuting Attorney,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the Court.

This appeal was taken from a judgment sentencing the defendant to a term of from 1 to 10 years in the penitentiary for rape.[1]  The only error assigned is that the judgment is contrary to law and the evidence.  Since the basis of appellant's contention is that the evidence fails to show that the prosecutrix offered any resistance, or that the latter was overcome by force or violence, it is necessary to review the evidence, especially that portion thereof which relates to the resistance on the part of the injured female.

From the testimony of the prosecutrix, Candelaria Díaz, it appears that she is a married woman, that she has three children, and that on September 19, 1946, she lived in the ward of Río Abajo, Municipality of Las Piedras; that on said date she was in Fajardo and left there in the afternoon to return to her home, for which purpose she was compelled to go through Naguabo; that she arrived in Naguabo by bus at about 6 p. m.; that she asked a policeman to get her a seat on a bus in order to continue her trip; that she could not find a bus, and the appellant or one of his companions procured accommodations for her as a passenger in an automobile; that the latter was a two-door car with an enclosed body; that she occupied the back seat and the appellant and another supposed passenger also got in there, the chauffeur sitting on the front seat; that she did not know any of the three men; that as soon as they left Naguabo, the men started to struggle with her in order to have sexual intercourse with her; that they turned off the lights and took off their trousers; that the three of them simultaneously sought to abuse her;

---

[1] The information was filed against the appellant and two other defendants; but the latter were tried separately.

that they embraced her, took off her "panties," and threw her on her back in the car; that she cried out and shouted for help, but to no avail, and that the appellant was the first one to have sexual intercourse with her; that he threatened her with breaking her neck (*"el cogote"*) if she did not yield to his wishes; that they tore off one of her shoes and carried her to a cane-field, and the three men continued to abuse her there; that then they carried her back to the automobile, and one of them forcibly sat her on his lap and had carnal copulation with her in an unnatural way; that the three men left her on the highway, in front of a store beyond Río Blanco; and that Don Miguel Mendoza took her to the village of Río.

The prosecutrix in her testimony repeatedly refers to her struggle with the three men in order to prevent the beastly acts perpetrated upon her; but she fails to specify the particulars of such a struggle. However, the resistance which she offered appears sufficiently detailed in the affidavit made by the appellant himself before the Justice of the Peace of Naguabo on September 20, 1946. That affidavit was introduced in evidence by the district attorney, and in view of the light which it throws upon the question raised by the appellant, we copy it verbatim below:

"Affidavit of Carlos Pimentel Hernández.—At Naguabo, P. R., on this 20th day of September, 1946, there appears before this court Carlos Pimentel Hernández, of legal age, single, resident of Naguabo, who, upon being duly sworn according to law, deposes and says: My name and other personal circumstances are as stated above; I have been informed of my right, as a presumptive defendant, to testify or not in this case, and that if I make any statement, the same may be used in my behalf or against me, which right I waive, and I declare my wish to testify as follows:

"That on September 19, 1946, at about half past seven or eight o'clock in the evening, I was about to go to a movie; that I saw a white, thin woman, who was talking with Mr. José Colón, a police corporal; that said woman was seeking a conveyance to go to Las Piedras; that I noticed that Luis Medina Ramos, a boy who is engaged in repairing automobile tires, told Mrs. Candelaria Díaz, that

is, the same woman who was talking with Corporal Colón, to follow him, that he had got her a car to convey her; that the lady in question walked behind him and I followed them; that they went as far as the store 'La Quincallita', on Baldorioty Street of Naguabo, where there was parked an automobile, which is operated by Rafael Peña López, a chauffeur; that then the said Rafael Peña and Luis Medina told the lady to get in, that they would convey her; that I did not notice that they discussed any charges for the trip; that Luis Medina borrowed a quarter from me and, adding to it a quarter which he had, he procured two gallons of gasoline for said car; that we went in the direction of Las Piedras, along the highway which leads to Juncos; that when we reached Peña Pobre, I saw that the car's lights went out; that then I asked the chauffeur: 'What is the matter, Rafael?' and by touching my leg he signaled me to shut up, and it was then that I realized that there was something suspicious about the trip; that afterwards, the chauffeur Rafael Peña drove in the direction of the Pita Haya road and entered a lane; *that before that, when the car's lights went out, I saw Luis Medina and also the chauffeur Rafael López trying to have sexual intercourse with Mrs. Candelaria Díaz, but she refused and nothing happened;* that later on, when we reached the lane, Rafael again tried to have sexual intercourse with the woman, he took off his trousers and *struggled to do it, he laid the woman down but she got up,* he seized *her again and overpowered* her, *and when (sic) to do it, the woman defended herself and Rafael did not succeed in doing anything;* that then I, the affiant, tried to do it, but without using any force, and when I saw that the woman refused, I withdrew, and *it was then that Luis Medina entered the car, and on the back seat he took her in his lap, forcibly took off her bloomers and thus had sexual intercourse with said woman; that I believe he also did it by the back side, that is, by the rectum, because (sic) he penetrated her, she cried out; that he did it first by the front side, lying on top of her, and then, when she struggled to get up, he took her in his lap and did it by the back.*[2]   That the foregoing statements are true, and I swear to and sign the same."

---

[2] In this connection, Dr. Rafael Domínguez testified that Candelaria Díaz was taken to the hospital in a state of deep depression on the morning of September 20, 1946; that he examined her sexual organs and took specimens of genital secretion, which he examined under a microscope; and that she had quite marked lacerations in the perianal region.

In support of his contention, the appellant cites § 255(4) of the Penal Code, which reads thus:

"Sec. 255. Rape is an act of sexual intercourse, accomplished with a female not the wife of the perpetrator, under any of the following circumstances:

"  *         *         *         *         *         *         *

"4. Where she resists, but her resistance is overcome by force or violence."

The defendant also cites the case of *People* v. *Rodríguez,* 66 P.R.R. 881, wherein we said:

"Pursuant to the above-copied Section, resistance on the part of the woman is an essential element of the crime. In the absence of such resistance, it is understood that the act was committed with her consent. A mere refusal to consent is not sufficient. The resistance must be real and to such a degree that it may be overcome only by force or violence unless the woman should be prevented from resisting by reason of threats of great and immediate bodily harm, accompanied by apparent power of execution."

We have already seen, from the affidavit of the appellant, how the resistance offered by the prosecutrix was overcome by force. It is true that the appellant in his affidavit tries to exculpate himself and to place all the blame on his companions, confining himself to the admission that he also attempted to have sexual intercourse with the prosecutrix after his companions had done it, but "without using any force," and when he saw that she refused, he withdrew.

What greater resistance could be offered by a defenseless woman in her struggle against these three men who were anxious to have carnal copulation with her? Does the appellant claim that the woman should have defended herself with her fists against three men, undoubtedly exposing herself to the risk of receiving great bodily harm or perhaps death?

The case of *People* v. *Rodríguez, supra,* has not the scope attributed to it by the appellant. What that case holds is that the resistance "must be real and to such a degree that

it may be overcome only by force or violence, unless the woman should be prevented from resisting by reason of threats of great and immediate bodily harm, accompanied by apparent power of execution.''

That case contemplates two distinct situations: (*a*) that the resistance of the woman be overcome by force, as happened in the instant case; or (*b*) that the woman be prevented from offering resistance by reason of threats of great and immediate bodily harm. The first modality was fulfilled, for it was proved, by the testimony of the prosecutrix and by that of the appellant himself, that she offered all the resistance she could offer under the circumstances. It is true that the appellant denies having had sexual intercourse with her; but the fact is, according to his own statements, that at the time the woman was trying to get accommodation for herself in an automobile in order to travel to her home, the appellant was about to enter a motion-picture theater; yet he changed his plans in order to go with his companions, without the reasons therefor appearing from the record, and joined them in their venture. According to his affidavit, he was all the time in the company of the other two men, on whom he now seeks to throw all the blame, and, as we have seen, the woman testified that he did not confine his intervention to making proposals to her but that he was the first one to have sexual intercourse with her against her will and overcoming her resistance by force.

The only error assigned by the appellant is nonexistent, and since it does not appear that any reversible error has been committed, the judgment appealed from should be affirmed.